Monty L. Barnett, #6-2694
Rachel E. Ryckman, #7-4656
Keith R. Olivera *(Pro Hac Vice)*
White and Steele, P.C.
Dominion Towers, North Tower
600 17th Street, Suite 600N
Denver, CO  80202-5406
(303) 296-2828
mbarnett@wsteele.com
rryckman@wsteele.com
kolivera@wsteele.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

**CARLIE SHERMAN, ANNA GOZUN, AMANDA NASH**, and **JOHN DOE** on behalf of themselves and all similarly situated persons,

PLAINTIFFS,

v.

**TRINITY TEEN SOLUTIONS, INC.,** a Wyoming corporation; **TRIANGLE CROSS RANCH, LLC**, a Wyoming limited liability corporation; **MONKS OF THE MOST BLESSED VIRGIN MARY OF MOUNT CARMEL, d/b/a MYSTIC MONK COFFEE**, a Wyoming corporation; **GERALD E. SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **ANGELA C. WOODWARD**; **JERRY D. WOODWARD**; **DANIEL SCHNEIDER; MATHEW SCHNEIDER; MARK SCHNEIDER; KARA WOODWARD**; **KYLE WOODWARD**; **THOMAS GEORGE; JUDITH D. JEFFERIS**; **DALLY-UP, LLC**, a Wyoming limited liability corporation; **ROCK CREEK RANCH, INC.**, a Delaware corporation; **DIOCESE OF CHEYENNE**, a Wyoming corporation; and the **SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY**, a Texas corporation; and **NEW MOUNT CARMEL FOUNDATION, INC.**, a Wyoming corporation,

DEFENDANTS.

Civil Case No. 20-CV-00215-SWS

---

**BRIEF IN SUPPORT OF DEFENDANTS TRIANGLE CROSS RANCH, LLC, GERALD E. SCHNEIDER, MICHAELEEN P. SCHNEIDER, MATTHEW SCHNEIDER, MARK SCHNEIDER, AND THOMAS GEORGE'S MOTION TO DISMISS**

---

## I.   INTRODUCTION

Triangle Cross Ranch, LLC ("TCR"), is a therapeutic boarding program in northwest Wyoming that offers services to at-risk teenage males in addressing personal and behavioral issues through a combination of counseling, education, and ranch life.  Participants in the program are enrolled in the program with consent.  Among the several hundreds, if not thousands of young men who have participated in TCR's program, only one unidentified John Doe is bringing claims against TCR in this lawsuit.  Notably, none of the three female plaintiffs alleges that they attended any programs at TCR, ever visited TCR, or had any interaction with TCR's employees.

Plaintiff John Doe was a resident at TCR on only one occasion.  His stay began mid-May 2011 and lasted until December 20, 2011.  Class Action Complaint [Doc. 1], 87.  In the Complaint John Doe relies on conclusory allegations to support his contention that one decade ago, he was forced to complete ranch chores - care for livestock, repair equipment, and assist with the construction of buildings and irrigation systems - and if he did not complete those chores, then he would be subject to discipline.  These conclusory allegations, without more, are insufficient to survive dismissal under F.R.C.P. 12(b)(6).

In this putative class action, plaintiffs assert four causes of action against defendants Triangle Cross Ranch, LLC, Gerald E. Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, and Thomas George (collectively, the "TCR Defendants"): Count 1 -  a claim under 18 U.S.C. §1589(a) for allegedly obtaining the labor services of plaintiffs by means of harm or threats of harm; Count 2 - a claim under 18 U.S.C. §1589(b) for allegedly receiving a known

benefit from forced labor; Count 3 - a claim under 18 U.S.C. § 1590(a) for alleged trafficking (collectively, the "Labor Claims"); and Count 4 - a claim under 18 U.S.C. § 1961 for alleged participation in an enterprise through a pattern of racketeering activity ("RICO") Doc. 1, Counts 1-4.[1] Each cause of action suffers from fatal deficiencies and is insufficient to survive dismissal.

With respect to the RICO claim, plaintiffs seek redress for conduct that occurred in 2011, despite not filing this action until November 2020. Accordingly, that claim is barred by RICO's four-year statute of limitations. Plaintiffs also lack standing to pursue a RICO claim against the TCR defendants because they are not seeking recovery for any alleged harm to business or property – which is required under the RICO statute. Finally, plaintiffs have not set forth the basic elements of a RICO claim because the allegations that misconduct occurred in a seven-month window nearly a decade ago cannot support a finding of a pattern of racketeering injury, and the alleged predicate acts ("the Labor Claims") are not supported by the allegations of the Complaint.

Plaintiffs' Labor Claims also suffer from multiple, fatal defects. First, the conduct underlying plaintiffs' claims – performing chores as part of a treatment program – is not the type of conduct prohibited under the referenced forced labor statutes. Second, even if the conduct might have been prohibited under those statutes, the plaintiffs' parents consented to the conduct at issue and thus it is not actionable. Additionally, plaintiffs have not – because they cannot – allege that the TCR Defendants engaged in knowing conduct, which is required for pleading a viable claim.

In total, plaintiffs seek redress for purely lawful conduct and their attempts to assert that such conduct violates RICO ("the RICO claim") or federal forced labor and trafficking statutes fail as a matter of law. As such, the plaintiffs' claims should be dismissed as to the TCR Defendants in their entirety and with prejudice.

---

[1] Count 1 – Civil Action Under Federal Law for Forced Labor 18 U.S.C. § 1589(a) is not asserted against Defendant Thomas George. Doc. 1, §§ 110-116.

## II.    STATEMENT OF FACTS

For many years, TCR offered a place for parents to send their teenage sons with severe issues such as histories of alcohol and drug abuse for intense, but beneficial treatment programs. *See* Doc. 1 at 3.  As part of that program, in addition to counseling, treatment, and education, the boys participated in daily ranch chores such as feeding, grooming, and caring for the livestock (including the less desirable task of shoving manure), and maintaining equipment and buildings. *See* Doc. 1 at 49.  If a resident of TCR refused to perform the chores, he might be required to perform additional chores or otherwise be subject to discipline. *See* Doc. 1 at 91.

Residents were brought to TCR by their parents or guardians and the parents and guardians consented to their sons' attendance by paying thousands of dollars in monthly fees to TCR. *See* Doc. 1 at 97.  In some instances, likely because of the difficulty of bringing a troubled teen to a place where they could get the help they needed, the parents may have used a third-party to bring the teenagers to TCR. *See* Doc. 1 at 87 fn. 33.  While they were residents of TCR, the teenagers were able to communicate with their parents by letters and telephone calls. *See* Doc. 1 at 17. While TCR required the residents to complete a certain level of growth in order to complete the program, the parents of those residents could withdraw their teenager at any time and stop paying the monthly fees to TCR. *See* generally Doc. 1 at 56.

The ranch offered two levels of housing for its residents. *See* Doc. 1 at 91.  When a resident first arrived at TCR, they would live in the "Wilderness Level" structure which was an outdoor building that housed multiple residents in a camp-like setting. *See* Doc. 1 at 16.  While the structure did not afford all of the creature comforts found in a luxury day spa, it did provide a place for residents to sleep, store their belongings and interact with other residents. *Id.*  After a period of time, when the residents had adjusted to the ranch and its daily routine, they could progress to

Bunkhouse Level. *Id.* In that level, the residents would acquire more options for food and clothing, and experience more comfortable living conditions. *Id.*

The only plaintiff who purportedly stayed at TCR has been identified as a "John Doe" and stayed at the ranch for a period of seven months between May and December 2011. *See* Doc. 1 at 87. In the Complaint, John Doe alleges that he completed standard chores necessary for the operation of the ranch and, if he refused to participate in his chores, asserts that he might suffer repercussions such as being forced to perform additional chores, completing a humiliating task such as eating bugs, or being subject to discipline or restrictions on privileges. *See* Doc. 1 at 88. John Doe also contends that he could have been subjected to physical, verbal, psychological, and emotional abuse if he did not complete those chores but he fails to set forth a single definitive fact indicating that such abuse actually occurred. *See* Doc. 1 at 87-90.

Based on those allegations, John Doe (and the other plaintiffs) assert claims for purported violations of certain forced labor statutes (counts 1, 2,3,) and a civil RICO claim (count 4). *See generally* Doc. 1 at 128-145. John Doe seeks damages for alleged bodily injury, lost wages, and unspecified "economic harm" but does not allege that he suffered an injury to business or property. *See* Doc. 1 at 142-145.

Certain of plaintiffs' allegations reference Trinity Teen Solutions, Inc. ("TTS"), which operated a treatment facility for teenage girls that is wholly distinct from the TCR. *See* Doc. 1 at 3-4. Indeed, the TCR defendants are not alleged to be owners, officers, or directors of TTS. Further, TTS and the TCR cater to entirely different clientele. *Id.* While the TCR only accepts males as residents, TTS provides its services exclusively to female residents. *Id.*

## III.   LEGAL STANDARD

F.R.C.P. 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its fact." *Ashcroft v.* Iqbal, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.   Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680; *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) citing to *Cory v. Allstate Ins.,* 583 F.3d 1240,1244 (10th Cir. 2009).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Iqba*l, 556 U.S. at 680.  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  *Id.* "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177, 10th Cir. (2007) (italics in original).

## IV.    PLAINTIFFS' RICO CLAIM (COUNT 4) FAILS AS A MATTER OF LAW

Plaintiffs allege that the defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et. seq ("RICO").  Doc. 1 at 127-145.  However, plaintiffs' RICO claim has multiple fatal defects.  In order to state a RICO claim, plaintiffs must bring their claim within four years from the date their injury occurred and allege four factors: the defendants "(1) conduct[ed the affairs] (2) of an enterprise (3) through a pattern (4) of racketeering activity."

*Robbins v. Wilkie*, 300 F. 3d 1208, 1210 (10th Cir. 2002) (internal citations omitted).  Further, to have standing to bring a RICO claim, the plaintiffs must allege that they suffered an injury to business or property.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) citing 18 U.S.C. § 1964(c).  Here, plaintiffs have failed on all accounts.

As a threshold matter, plaintiffs have brought their claim nine years after John Doe stayed at the ranch and five years after the statute of limitations expired.  Further, plaintiffs have alleged injuries that are insufficient to confer standing under the RICO statute because they allege only emotional or physical harm and lost wages as their damages.  Finally, plaintiffs cannot set forth the fundamental elements of a RICO claim because they have not alleged continuous conduct or a viable predicate act.  Each of these deficiencies is fatal to plaintiff's RICO Claim and warrants dismissal of that cause of action.

### a.   Plaintiffs' RICO Claim is Time-Barred

Plaintiffs' RICO claim against the TCR Defendants is barred by RICO's four-year statute of limitations.  While the RICO statute itself does not contain an express limitations period, the Supreme Court in *Agency Holding Corp. v. Malley-Drift Assoc., Inc.*, 483 U.S. 143, 156 (1987) confirmed that a four-year statute of limitations period applies to all civil RICO actions.  The Tenth Circuit has repeatedly applied this four-year statute of limitations to RICO matters.  *See e.g., Robert L. Kroenlein Trust v. Kirchhefer*, 764 F.3d 1268, 1279 (10th Cir. 2014); *Bath v. Bushkin, Gaims, Gaines & Jonas*, 913 F.2d 817, 820, (10th Cir. 1990); *Schrag v. Dinges*, 73 F.3d 374 (10th Cir. 1995) (internal citations omitted).

Here, plaintiffs have offered a series of allegations in support of their RICO claim premised on the treatment of John Doe while he was a resident of the ranch.  In addition to failing to meet the factual and legal requirements necessary to state a RICO claim, those allegations also are untimely.  Specifically, plaintiffs have alleged that John Doe was a resident of TCR from "mid

May 2011" through "December 20, 2011." *See* Doc. 1 at 87. The Complaint also confirms that "Plaintiff Doe was [only] a resident at TCR on one occasion." *See* Doc. 1 at 87. Thus, even if plaintiffs' claim against TCR accrued on the last date that John Doe was a resident of TCR, those claims would have accrued on December 20, 2011. Plaintiffs filed the instant action on November 25, 2020. As such, it was filed nearly nine years after the claim accrued and is barred by the applicable four-year statute of limitations.[2]

In an attempt to avoid RICO's four-year statute of limitations (as well as to expand the scope of their claims), plaintiffs have attempted to define the RICO enterprise to include all of the named defendants.[3] However, even the most cursory review of the Complaint confirms that plaintiffs have not alleged a single fact connecting the TCR Defendants[4] to any of the events that allegedly transpired at TTS. Instead, plaintiffs have offered a series of vague assertions that only confirm the failure of their contention. Specifically, plaintiffs have alleged that "[u]pon information and belief, Defendant Jerry Schneider had had his daughter… set up a similar ranch for troubled teenage girls." Doc. 1 at 4. Plaintiffs further contend that "Defendant Gerald Schneider and Defendant Angela Woodward developed a joint scheme of operating for-profit businesses" and "Defendants Angela Woodward and Jerry Woodard (sic) established TTS… following in Gerald Schneider's footsteps." Doc. 1 at 51-52. Put simply, these allegations cannot

---

[2] Following the Supreme Court's rejection of the "injury and pattern discovery rule" in *Rotella v. Wood*, 528 U.S. 549, 555 (2000), the Tenth Circuit has not confirmed whether it follows the injury-discovery rule or the injury-occurrence rule. Under the prevailing theory, the injury-discovery rule, the claims would have accrued when John Doe was a resident of TCR and discovered his injury. *See Robert L. Kroenlien Tr. Ex rel. Alden v. Kirchefer*, 764 F.3d 1268, 1275 (10th Cir. 2014). Under the injury-occurrence rule, the claims would have accrued when John Doe's injury occurred, which also would have been during his time at the ranch. *See id.* Thus, regardless of what theory applied, John Doe's claims would be time-barred.

[3] While the conduct at TTS also occurred more than four year prior to the filing of the Complaint, plaintiffs suggest that certain of the plaintiffs that stayed at TTS were minor children at the time the alleged conduct occurred and that their claims were stayed until a period where the instant action was timely.

[4] The TCR defendants do not concede that they are an "enterprise" for purposes of the RICO analysis. Rather, the TCR defendants assert that plaintiffs could not claim that any of the TCR defendants could be part of an enterprise that includes any of the defendants that owned or operated TTS.

support a contention that any purported RICO enterprise could include both the TTS and the TCR defendants.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that when considering a motion to dismiss, a Court does not need to accept unsupported conclusory allegations as true).

Under the RICO statute, an enterprise is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  When interpreting that statute, Courts have found that an association-in-fact enterprise must have three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associated to pursue the enterprise's purpose.  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  In *Boyle*, for example, the Court found that a group of individuals who robbed over thirty (30) night deposit boxes over the course of several years was an enterprise in fact, because they planned the robberies in advance, worked together to gather the necessary tools, and divvied up the proceeds.  *See id. at 952.*  The Court recognized that there would not have been an association in fact enterprise if the individuals had acted "independently and without coordination."  *Id.* at 94-97 fn. 4.  Thus, when there is merely parallel conduct by alleged tortfeasors, without coordination, there is not a cohesive enterprise.  *See e.g., Rao v. BP Prods. N. Am. Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (affirming dismissal of a RICO claim for failure to allege an association in fact enterprise consisting of different actors involved in different events without suggesting how the group acted together with a common purpose or through a common course of conduct).

In an opinion authored by Current Associate Justice of the Supreme Court of the United States Neil Gorsuch, the Tenth Circuit applied the *Boyle* test to determine whether a well-organized group of independent drug dealers working out of the same motel were considered an enterprise under RICO.  *United States v. Hutchinson,* 573 F.3d 1011 (10th Cir. 2009).  The now Justice Gorsuch described key relevant facts that supported a finding of a single enterprise:

>Denver's Alpine Rose Motel was something of a "drive-thru" crack market. Customers needed only to pull their cars into the parking lot to receive window-side service from one of the motel's resident drug runners. A runner would take the customer's order, proceed to different motel rooms occupied by crack dealers until he found sufficient quantities to fill the order, and then make the delivery. So-called enforcers helped keep the peace among the motel's residents. Two leaders of the operation replenished the various dealers' drug supply on a daily basis and mediated disputes. A peculiar sort of community spirit evolved, with a Mother's Day "crack scramble" and an Easter egg hunt with rocks of crack substituted for eggs. The business model proved highly successful--some 100 customers visited each day at the height of the motel's crack dealing operation in the summer of 2004.

*Id.* at 1016.

Here, there are no such allegations of coordination between the TCR defendants and the TTS Defendants.  To the contrary, the allegations confirm that the operations were entirely separate.  Most notably, while the TCR defendants offered services to troubled males, the TTS Defendants offered services to troubled females.  Thus, no resident of TCR was also a resident of TTS.  Further, the Complaint does not allege that the ranch and TTS shared owners, directors, or officers.  Instead, the Complaint acknowledges that the individuals who owned and operated each entity were separate individuals.  Finally, the Complaint does not make any allegations of shared services between the ranch and TTS or contend that there was any financial dependency between the two entities.  Thus, the ranch and TTS could not constitute an enterprise-in-fact.  And, even if the three female plaintiffs' allegations were timely (which they are not), that conduct could not be used to support a claim against the TCR defendants.

### b.  Plaintiffs Lack Standing to Pursue a RICO Claim Where There Are No Allegations of an Injury to Business or Property

In order to have standing to bring a civil claim under RICO, a plaintiff must allege injury to either their business or property.  18 U.S.C. § 1964(c); *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1235 (D. Colo. 2010).  The phrase "business or property" is read narrowly to

"assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, 2010 U.S. Dist. LEXIS 77775 *37; (S.D. N. Y. 2010) (internal citations omitted).  As one Court explained:

> Although RICO is to be read broadly, *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985), "[t]he phrase 'business or property' also retains restrictive significance." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979). *See also DeMauro v. DeMauro,* 115 F.3d 94, 97 (1st Cir. 1997) ("But while RICO is to be construed broadly, *Sedima,* 473 U.S. at 498, 'injury to property' is not an infinitely elastic concept."). Such restriction "'helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff.'" *Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hospital Corp. of Am.,* 36 F.3d 69, 70 (9th Cir. 1994)). Thus, as a basic rule, injury to business or property "'requires proof of a concrete financial loss and not merely injury to a valuable intangible property interest.'" *Maio,* 221 F.3d at 483 (quoting *Steele,* 36 F.3d at 70). *See also McLaughlin v. Am. Tobacco Co.,* 522 F.3d 215, 227 (2d. Cir. 2008) ("A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual,* quantifiable injury.") (emphasis in original); *Regions Bank v. J.R. Oil Co.,* 387 F.3d 721, 728 (8th Cir. 2004) ("'[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest.'" (quoting *Steele,* 36 F.3d at 70)); *In re Taxable Municipal Bond Sec. Litig.,* 51 F.3d 518, 523 (5th Cir. 1995) (noting that RICO does not protect an "intangible property interest"); *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."); *In re Bridgestone/Firestone, Inc. Tires Products Liability Litig.,* 155 F. Supp. 2d 1069, 1090 (S.D. Ind. 2001) ("Federal courts have consistently and repeatedly held that to satisfy the injury requirement of section 1964, a plaintiff must prove an actual, concrete, monetary loss.")

*Ivar,* 705 F. Supp. 2d at 1232-1233.

Here, plaintiffs have alleged three categories of damages: (1) they have been force[d] to perform labor services without compensation; (2) they have "suffered emotional and physical pain" and (3) they have "suffered economic damages" likely flowing from alleged bodily injuries.  *See* Doc. 1 at 143-145.  None of those three categories of purported damages alleges an injury to business or property and thus, plaintiffs do not have standing to pursue a RICO claim.

Plaintiffs must allege facts demonstrating an injury to their business or property and not physical, emotional or reputational harm or any economic aspect of such harm--and that plaintiffs' injury is proximately caused by the acts constituting the RICO violation.  *Hollander v. Flash Dancers Topless Club*, 340 F.Supp. 2d 453, 458 (S.D.N.Y. 2004) citing to *Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 265-68 (1992)*; *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 497 (1985); *Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 257 (2d Cir. 2004).  *Rylewicz v. Beaton Services, Ltd.,* 888 F.2d 1175, 1180 (7th Cir. 1989*)*; *Grogan v. Platt,* 835 F.2d 844, 847 (11th Cir.) ("Pecuniary losses are so fundamentally a part of personal injuries that they should be considered something other than injury to 'business or property'."), *rehearing denied,* 851 F.2d 1423 (11th Cir.), *cert. denied,* 488 U.S. 981, 102 L. Ed. 2d 562 (1988); *Shaw v. Rolex Watch U.S.A., Inc.,* 776 F. Supp. 128, 134-35 (S.D.N.Y. 1991) (emotional distress and physical injury not cognizable under RICO).

Lastly, under the instant facts, plaintiffs cannot allege lost wages as a basis for standing to assert a RICO claim.  Specifically, plaintiffs have not alleged that they expected to receive compensation for completing the chores that were part of the treatment program and any guestimate of the reasonable compensation for performing such chores would not be an actual quantifiable loss.  As an initial matter, plaintiffs' lost wages claim fails because the chores they performed were part of the treatment at TCR and, as they concede, the expectation was that the plaintiffs would pay TCR for their treatment (and not the other way around).  As the Complaint makes clear, parents paid monthly fees for their teenage children to attend a working ranch.  *See e.g.,* Doc. 1 at 3 ("The Triangle Ranch is advertised as a fifty thousand (50,000) acre **working ranch** with over one thousand (1,000) head of cattle."); *See* Doc. 1 at 97.  (emphasis added).  Absent from the Complaint is any allegation that the parents or residents expected that their teenagers would receive wages for the chores they performed.

These circumstances are in stark contrast to cases where Courts have found a standing for a plaintiff to bring a RICO claim when they accepted a job offer and were denied reasonable compensation and forced to work through threats such as visa loss or deportation.  *See, e.g., Tanedo v. East Baton Rouge Parish Sch. Bd*, 2012 U.S. Dist. LEXIS 157725 *2-8 (C.D. Cal. 2012) (finding standing to bring a RICO claim where plaintiffs, Filipino citizens, accepted a job to teach in the United States from a recruiter, and then were forced by that recruiter to pay additional fees in order to retrieve their passports from that recruiter and, when eventually permitted to work, were faced with threats of job and visa loss).

Plaintiff John Doe's request to receive compensation for his chores performed at TCR more than nine years ago is simply an attempt to manufacture standing to sustain the RICO claim. However, an untimely request for payment for services where both parties understood that no payment would be made, supported by a guestimate of the costs and value of those services is not an actual, quantifiable injury that could support a RICO claim.  *See Ivar*, 705 F. Supp.2d at 1232 (observing that a showing of injury "requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest" and "[a] plaintiff asserting a claim under 18 U.S.C. 1964(c) must allege actual, quantifiable injury.").

### c.   Plaintiffs' RICO Claim Fails as a Matter of Law Because They Have Not Alleged Continuous Conduct

Plaintiffs' RICO claim against the TCR Defendants also fails because they have not alleged any facts showing that the conduct was continuous.  In order to set forth a pattern of racketeering conduct, a plaintiff must demonstrate "that defendants have committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity."  *See Davidson v. Grant Thornton, LLP*, 582 Fed. Appx. 773,775-

776 (10th Cir. 2014).  This continuity can be shown in two different forms, open-ended continuity and closed-ended continuity.

Under open-ended continuity, the plaintiffs must show "past conduct that by its nature projects into the threat of repetition." *H.J. Inv. V. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989) (internal citations omitted).  Such a threat exists when (1) a specific threat of repetition exists, (2) the predicates are a regular way of conducting an ongoing legitimate business, or (3) the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.  *Id.* at 243.  To establish open-ended continuity, a plaintiff cannot rely on a hypothetical possibility of further acts or contend that a defendant who was once a RICO violator is likely to always be a RICO violator.  *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).  Courts will reject a claim of open-ended continuity when the conduct at issue does not have a risk of future repetition.  *See e.g., Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) (finding no open-ended continuity when one of the defendants had stopped committing the alleged predicate act); *Daedalus Capital, LLC v. Vinecombe,* 625 Fed. App'x. 973 (11th Cir. 2015) (finding no open-ended continuity when the criminal activity was not likely to repeat itself).  Here, there has been no allegation of forced labor by any plaintiff in the last nine years and, accordingly, there is no reasonable threat that such activity could resume.

Under closed-ended continuity, a plaintiff can assert that, even if not continuing at present, the alleged wrongful conduct arose from a "series of related predicates extend[ed] over a substantial period of time." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1988).  The Tenth Circuit has recognized that a closed period must extend over "a substantial period of time" and a "few weeks or month are insufficient." *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543-44 (10th Cir. 1993); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("[a]lthough we have not viewed two years as a bright-line requirement, it will be

rare that conduct persisting for a shorter period of time establishes closed-ended continuity."); *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995) ("this court has faced the question of continued racketeering activity in several cases, each time finding that conduct lasting no more than twelve months did not meet the standard for closed-ended continuity" citing to *Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 610-11 (3d Cir. 1991)).

Plaintiffs assert that they are proceeding under a theory of open-ended continuity. Doc. 1 at 141. However, the bare allegations made by John Doe concerning the conduct of the TCR Defendants cannot support a claim under either theory of continuity. Plaintiffs' lone allegations of misconduct at TCR pertain to conduct that occurred more than nine years ago. Such stale allegations (which has not repeated themselves) cannot support a claim of open-ended continuity. *See Turner*, 362 F.3d at 1230. Plaintiffs' claim fares no better when examined under the lens of closed-ended continuity. Even assuming that alleged misconduct occurred for the entire seven-month period when John Doe was at TCR, such conduct does not support a closed-ended continuous pattern of conduct. Courts routinely reject RICO claims premised on alleged conduct that occurred for a few months because such a short time span does not set forth a pattern of racketeering activity.[5]  *See, e.g., Battiste v. Arbors Mgmt., Inc.,* 522 F. App'x. 171, 173 (3d Cir. 2013) (affirming dismissal where scheme lasted only ten months); *Tabas*, 47 F.3d at 1293 (rejecting RICO claim for conduct lasting no more than 12 months). Therefore, the plaintiffs have not alleged a pattern of racketeering activity.

---

[5] To be clear, the Tenth Circuit considers additional factors when assessing whether an alleged pattern of racketeering conduct meets the standard for closed-ended continuity, such as the number of participants and victims and the number and variety of predicate acts. *See Resolution Trust*, 998 F.2d at 1543-44. Given that the Complaint identifies only a single purported victim, a single type of predicate act, and no verifiable instances of such conduct, the other factors also confirm that the plaintiffs' allegations cannot support a finding of closed-ended continuity.

**d.  Plaintiffs Have Failed to Allege a Predicate Act and Accordingly Their RICO Claim Fails**

Plaintiffs' RICO claim also fails because they have not set forth a viable predicate act.  18 U.S.C. § 1961 sets forth a list of conduct that could be a predicate act for purposes of a civil RICO claim.  Plaintiffs contend that the predicate acts that support their RICO claim are the forced labor claims set forth in Counts 1, 2, and 3.  However, as further discussed below, those forced labor claims fail as a matter of law because: (1) the forced labor statutes do not prohibit the conduct of the TCR Defendants; (2) plaintiffs' parents or guardians consented to the conduct at issue; and, (3) plaintiffs have not set forth any facts to support the knowledge element of a Trafficking Victims Protection Act claim.  Accordingly, plaintiffs have not set forth a viable predicate act and their RICO claim fails.

## V.   PLAINTIFFS' LABOR CLAIMS (COUNTS 1, 2, AND 3) FAIL AS A MATTER OF LAW

In addition to its RICO cause of action, plaintiffs also set forth three causes of action (Counts 1, 2, and 3) alleging that the TCR Defendants forced the plaintiffs to perform labor in violation of three federal "forced labor" and "human trafficking" statutes: (1) 18 U.S.C. § 1589(a); (2) 18 U.S.C. § 1589 (b); and 18 U.S.C. § 1590 (a) (collectively referred to as the "Labor Claims").

Count 1 of the Complaint alleges a violation of 18 U.S.C. § 1589 (a).  That statute prohibits anyone from *knowingly* providing or obtaining the labor or services of a person by any of the following means:

> **(1)**   **by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;**
>
> **(2)**   **by means of serious harm or threats of serious harm to that person or another person;**
>
> **(3)**   **by means of the abuse or threatened abuse of law or legal process; or**

> **(4)**     **by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.**

18 U.S.C. § 1589 (a) (emphasis added).

Based on plaintiffs' recitation of the elements of subcategories (1), (2), and (4) in their first cause of action, it appears that plaintiffs are proceeding solely under those theories of liability. (Doc. 1 at 110-116).

Plaintiffs' second cause of action against the TCR Defendants alleges a violation of 18 U.S.C. § 1589 (b).  That statute prohibits anyone from *knowingly* benefiting financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means. *Id.*

Plaintiffs' third cause of action alleges a violation of 18 U.S.C. § 1590(a).  That statute prohibits *knowingly* recruiting, harboring, transporting, providing or obtaining by any means, any person for labor or services.

With respect to Counts 1-3 of the Complaint, plaintiffs offer a single set of facts to support their allegations against the TCR Defendants.  Plaintiffs contend that John Doe completed ranch chores against his will out of fear that, if he did not complete the chores, he might be subject to discipline or unspecified abuse.  *See* Doc. 1 at 87-90.  Plaintiffs never allege that John Doe expected to receive payment for the chores in 2011, at the time that he completed them, which may explain why John Doe waited nine years to demand compensation.

The allegations relied upon by plaintiffs to support their Forced Labor Claims are insufficient to survive dismissal at this stage.  First, the claims seek redress for conduct that is not

protected by the federal labor and trafficking statutes at issue.  Second, the parents of the plaintiffs consented to the conduct at issue and thus the conduct was not unlawfully compelled.  Finally, plaintiffs have not alleged that any of the TCR Defendants knowingly violated the Forced Labor Statutes.  Thus, similar to the RICO claim, plaintiffs' Labor Claims should be dismissed with prejudice.

**a.   The Alleged Conduct Is Not the Type of Conduct Prohibited by the Trafficking Victims Protection Act**

The Trafficking Victims Protection Act ("TVPA") prohibits a party from knowingly obtaining the labor of another through threats of force, physical restraint, or serious harm.  18 U.S.C. § 1589 (a).   Plaintiffs who have successfully raised forced labor or human trafficking claims have generally alleged the same type of conduct.  Typically, those claims involve a plaintiff who has been lured to the United States under false promises of reasonable pay and safe working conditions.  Once they arrive, the plaintiff is forced to labor for long hours for minimal or no pay, often have their passports confiscated by their hosts, and are subjected to threats of deportation if they complain.  Put simply, those plaintiffs, unlike the plaintiffs in this lawsuit, had been promised reasonable employment and compensation, did not consent to the conduct at issue, and were not free to leave at any time or were otherwise subject to duress.

For example, in *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 110-12 (D.D.C. 2012) a plaintiff filed suit under 18 U.S.C. § 1589 and 18 U.S.C. § 1590 (a) alleging that she was lured to the United States under false pretenses and was subsequently forced to work for minimal pay under threat of deportation.  There, the plaintiff, a Tanzanian citizen, traveled to the United States to work as a maid/nanny in exchange for "reasonable working conditions, educational opportunities, and decent pay." *Id.* However, once she arrived in the United States, the host family confiscated her passport, kept her in isolation, and told her she would be deported within 24 hours if she did

not work long hours as a domestic servant and nanny.  Fearing deportation, the plaintiff worked seven days a week, often without taking breaks to rest or eat, and endured regular verbal and psychological abuse from one of her employers.  In rejecting the defendants' motion to dismiss, the Court found that such facts set out a claim for involuntary servitude, because the plaintiff was compelled to continue working through the threat of being deported (and not of her own volition).  *Kiwanuka*, 844 F. Supp. 2d at 16.  Similarly, in *Samirah v. Sabhnani*, 772 F. Supp. 2d 437 (E.D.N.Y. 2015), the plaintiffs, Indonesian citizens, were lured to the United States under promises that they could work for reasonable pay as caretakers of the Defendants' homes.  However, when they arrived in the United States, they were forced to work as domestic services for little pay while living under very poor conditions and being physically abused.  Based on the findings by the Court in a related criminal matter (which had convicted defendants of holding the plaintiffs in a condition of peonage), the Eastern District of New York granted plaintiffs' motion for summary judgment premised on violations of forced labor and other statutes.

Here, the plaintiffs here were not lured to TCR under promises that they would receive jobs and compensation.  To the contrary, plaintiff John Doe's family paid for the treatment he received while at TCR, which included participation in ranch chores and he was never promised that he would be compensated for any work he performed.  (Doc. 1).  Moreover, plaintiff John Doe does not allege – because he cannot allege – that his parents could not remove him from TCR at any time.

At most, plaintiff John Doe has alleged that, if he did not complete his chores, he might be subject to consequences, such as the inability to complete TCR's treatment program, the loss of the opportunity for certain benefits such as upgraded food or housing, or a requirement that he

perform additional chores.[6]  See Doc. 1 at 91 fn. 36.  However, even if plaintiff John Doe was presented with consequences for his failure to complete his chores, such admonitions do not constitute threats sufficient to support a Labor Claim.  Circumstances similar to those alleged by the plaintiffs in this case were rejected as insufficient to support a trafficking claim by the Ninth Circuit in *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012).  In that case, a husband and wife sued Scientology claiming that they had been forced to continue working for the church under threat of being labeled as "suppressive persons" i.e., excommunicated, which would cause them to lose touch with their family and friends who were members of the church.  In deciding that the plaintiffs have not set out a claim for human trafficking, the court noted that the plaintiffs were free to leave the church at any time, and the warnings that leaving the church's employment would cause them to be excommunicated were merely advisements of the consequences of leaving the church and not threats sufficient to support a trafficking claim. *Headley*, 687 F.3d at 1180.

Similarly, plaintiff John Doe was warned that if he did not fulfill certain elements of the treatment program then he would not be able to complete the program or might be subject to discipline, but he was never prevented from leaving the program at any time.  And, like the plaintiffs in *Headley*, the plaintiff in this case cannot assert a claim for forced labor simply because he might not have been informed that his failure to complete certain tasks might result in negative consequences.

### b.  Plaintiffs' Labor Claims Fail Because the Parents Consented to Their Teenage Child's Attendance at TCR

---

[6] Plaintiffs do contend that they might be subject to verbal or physical abuse if they did not perform their chores. However, plaintiffs have failed to put to any specific act by any TCR Defendant that might constitute abuse and only offer the conclusory, unsubstantiated allegation through a footnote that one TCR Defendant "physically abused" John Doe in an unspecified manner on two undisclosed occasions.

Plaintiffs' Labor Claims also fail, because the TCR Defendants obtained consent to perform the alleged labor in advance of any of the purported plaintiffs' residency at TCR. To succeed on their forced Labor Claim, plaintiffs must show that their labor was compelled by improper means. *See* 18 U.S.C. 1589 (a) ("serious harm" includes "any harm…that is sufficiently serious... to **compel** a reasonable person… to perform…labor or services). However, as the Complaint acknowledges, the plaintiffs' parents consented to their sons enrolling in the ranch's treatment program – which included the performance of ranch chores - when they paid for the enrollment fees. *See* Doc. 1 at 2-3, 56. Such consent negates the plaintiffs' claims.

To be clear, a parent has the right to make their minor child complete chores, such as those allegedly required at the ranch. As the Sixth Circuit in *United States v. Toviave,* 761 F.3d 623, 625 (6th Cir. 2014) recognized, "[a]n American parent has always had the right to make his child perform household chores." Further, "[a] person standing *in loco parentis*, or 'in the place of a parent'… also has that right." *See id.* (internally quotations omitted). And, "[t]he forced labor statute could not have been intended to overturn this longstanding parental right" because "[f]orcing children to do household chores cannot [amount to] forced labor without reading the statute as making most responsible Americans parents and guardians into federal criminals". *See id.*[7]

Thus, even if plaintiffs contend that they never consented to the TCR defendants requiring them to complete chores as part of their treatment program, their parents did consent (and were able to consent on their children's behalf). As such, the plaintiffs cannot show that they were compelled to complete labor by improper means and their Labor claims must fail.

---

[7] A child also requires his parent to consent on their behalf for most health care and treatment services. *See* Wyo. Stat. § 14-1-101. Thus, even if plaintiffs attempt to recharacterize the chores as health care treatments and not chores, their parents were still entitled to consent on their behalf.

### c.   Plaintiffs Fail to Allege Knowingly Violations of the Forced Labor Statutes by TCR Defendants

The three Labor Claims are premised on violations of 18 U.S.C. § 1589(a), (b) and 18 U.S.C. § 1590 (a).   While those claims set forth criminal penalties, 18 U.S.C. § 1595(a) permits a party to bring a civil cause of action against someone who has purportedly violated those statutes. However, in the absence of a criminal conviction, a plaintiff asserting a violation of a forced labor statute, must demonstrate that a defendant knew or should have known that he has engaged in an act violating such statutes.  *Ricchio v. Bijal*, Inc., 424 F.Supp.3d 182, 193 (D. Mass 2019).  Here, plaintiffs have not met that burden.

Indeed, plaintiffs have not made any assertions that the individual TCR Defendants acted with knowledge that they were violating the Forced Labor Statutes.  In fact, the Complaint makes virtually no assertions against any specific individual other than providing their title, address for service (which is often incorrect), and ownership interest in any of the named entities.[8]  This failure to allege knowledge by any individual is not surprising.   The TCR Defendants could not have had knowledge that they were violating a federal forced labor statute because they were aware that the parents had consented to the children's participation in the treatment program at a working ranch and had paid substantial monthly fees to TCR for that privilege.  (Doc. 1)  Further, TCR could not have knowingly violated a statute, because absent knowledge by one of its agents (which plaintiffs have not alleged), knowledge cannot be imputed to an impersonal entity.  *See U.S. v. A&P Trucking Co.,* 358 U.S. 121, 125 (1958).   Thus, none of the TCR Defendants knowingly violated

---

[8] Plaintiffs do make an allegation that John Doe was purportedly physically abused by Thomas George in an unspecified matter at an unspecified time.  However, plaintiffs have not asserted any fact suggest that such abuse actually occurred or otherwise offered any fact showing that Thomas George had knowingly violated of a forced labor statute.

a forced labor statute and the Labor Claims can be dismissed for that independent reason (as well as those cited above).[9]

<h2 style="text-align:center"><u>CONCLUSION</u></h2>

Plaintiffs have failed to state any viable claim against the TCR Defendants.  Specifically, plaintiffs' RICO claim (Count 4) fails because: (1) the conduct purportedly supporting the RICO claim occurred nine years ago and therefore is barred by the controlling four year statute of limitations; (2) plaintiffs do not have standing to bring a RICO claim because they have not suffered an injury to business or property; (3) plaintiffs have not plead the elements of RICO because the alleged wrongful conduct occurred nine years ago over a period of seven months and thus does not constitute a pattern of racketeering activity; and (4) plaintiffs have not alleged a viable predicate act, because their claim that the TCR Defendants violated certain forced labor statutes fails as a matter of law.

Plaintiffs' Labor Claims (Counts 1, 2, and 3) also fail because: (1) the forced labor statutes do not prohibit the conduct at issue; (2) the plaintiffs' parents consented to the conduct at issue and therefore plaintiffs were not compelled to engage in any forced labor; and (3) the plaintiffs have not set forth any allegations suggesting that the TCR Defendants knowingly violated the forced labor statutes.

Each of these deficiencies is fatal to plaintiffs' claims.  Accordingly, the TCR Defendants request that the Court dismiss the Complaint against each of them in its entirety and with prejudice and grant such other and further relief as the Court deems appropriate.

///

///

---

[9] The TCR defendants hereby incorporate the arguments and authorities raised by the other defendants in their motions to dismiss for failure to state a claim.

Respectfully submitted this 22nd day of January, 2021.

WHITE & STEELE, P.C.

*/s/ Rachel E. Ryckman*
Monty L. Barnett, #6-2694
Rachel E. Ryckman, # 7-4656
Keith R. Olivera (*Pro Hac Vice*)
White and Steele, P.C.
Dominion Towers, North Tower
600 Seventeenth Street, Suite 600N
Denver, CO  80202
ATTORNEYS FOR DEFENDANTS
TRIANGLE CROSS RANCH, LLC
GERALD E. SCHNEIDER;
MICHAELEEN P. SCHNEIDER
MATTHEW SCHNEIDER;
MARK SCHNEIDER and
THOMAS GEORGE

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed on January 22, 2021, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Michael Rosenthal | mike@hkwyolaw.com |
| Nathan Nicholas | nnicholas@hkwyolaw.com |
| Brice M. Timmons | brice@donatilaw.com |
| Bryce Ashby | bryce@donatilaw.com |
| Craig Edgington | craig@donatilaw.com |
| Frank L. Watson, III | fwatson@watsonburns.com |
| Rick L. Koehmstedt | rick@schwartzbon.com |
| Patricia K. Buchanan | pkb@pattersonbuchanan.com |
| Thomas Quinn | tquinn@gordonrees.com |
| Lillian Alves | lalves@grsm.com |
| Loyd E. Smith | lsmith@hickeyevans.com |
| Paul J. Hickey | phickey@hickeyevans.com |
| Traci Lacock | tlacock@hirstapplegate.com |
| Makena Stoakes | mstoakes@smllawoffice.com |
| Patrick Sodoro | psodoro@smllawoffice.com |
| Timothy Stubson | tstubson@crowleyfleck.com |
| Jane France | jfrance@spkm.org |

/s/ Rachel E. Ryckman
For White and Steele