Michael Rosenthal, WSB #5-2099
Nathan Nicholas, WSB #7-5078
Hathaway & Kunz, LLP
P.O. Box 1208
Cheyenne, WY 82003-1208
(307) 634-7723
Fax: (307) 634-0985
mike@hkwyolaw.com
nnicholas@hkwyolaw.com

Brice M. Timmons (TN Bar #29582)
Bryce Ashby (TN Bar #026179)
Craig Edgington (TN Bar #038205)
*Pro Hac Vice*
Donati Law, PLLC
1545 Union Ave.
Memphis, TN 38104
(901) 209-5500
Fax: (901) 278-3111
brice@donatilaw.com
bryce@donatilaw.com
craig@donatilaw.com

Frank L. Watson, III (TN Bar #015073)
*Pro Hac Vice*
Watson Burns, PLLC
253 Adams Avenue
Memphis, TN 38104
(901) 529-7996
Fax: (901) 529-7998
fwatson@watsonburns.com

ATTORNEYS FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **ANDREW SCAVUZZO and H.I., as Parent and Next Friend of T.I., on behalf of themselves and all similarly situated persons,** ) | **Case No. 1:20-CV-00215-SWS** |
| ) | |
| PLAINTIFFS, ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, 18 U.S.C. § 1595** |
| v. ) | |
| **TRIANGLE CROSS RANCH, LLC**, a Wyoming limited liability corporation; **GERALD E. SCHNEIDER**; **MICHAELEEN P. SCHNEIDER**; **MATTHEW** ) | **JURY TRIAL DEMANDED PURSUANT TO FED. R. CIV. PRO. 38(a) & (b)** |

SCHNEIDER; **MARK SCHNEIDER;**           )
**THOMAS GEORGE;** and the **SOCIETY OF**   )
**OUR LADY OF THE MOST HOLY**             )
**TRINITY**, a Texas corporation.,         )
                                          )
                                          )
                                          )
                                          )
          DEFENDANTS.                      )

---

# SECOND AMENDED COMPLAINT

---

Plaintiffs Andrew Scavuzzo and H.I. as Parent and Next Friend of T.I., (hereinafter collectively "Plaintiffs") on behalf of themselves and all other similarly situated persons, by and through their designated attorneys, bring this action against Defendants Triangle Cross Ranch, LLC ("TCR, LLC"), Gerald ("Jerry Schneider") Schneider, Michaeleen P. Schneider, Matthew Schneider, Mark Schneider, Thomas ("Tom") George, and Society of Our Lady of the Most Holy Trinity ("SOLT") (hereinafter collectively "Defendants"). Plaintiffs allege as follows:

## I.

## NATURE OF THE ACTION

1.      Human trafficking remains a shockingly prevalent practice throughout the world. It has become an epidemic in the United States.  Human trafficking victimizes vulnerable persons by forcing, defrauding, or otherwise coercing them into sexual or labor exploitation. In 2000, Congress first enacted the Trafficking Victims Protection Act to combat the exploitation of individuals, especially women and children, coerced into the sex trade, slavery, and involuntary servitude. The act takes an expansive view of trafficking ranging from violent coercion into the

sex trade to the use of psychological, financial, and legal means to frighten individuals into providing labor without compensation.

2.    The "troubled teen industry" is a predatory industry that operates across the United States, especially in rural areas where the oversight of mental health facilities and residential facilities for minors is difficult or impracticable. These companies promise the parents of teens with mental and emotional disturbances, problems with delinquency, and addiction issues respite from the challenges of treatment and parenting their children with too-good-to-be-true promises of cutting-edge therapies and education in a residential setting. Often these facilities are unlicensed and unregulated or operate in legal gray areas. These companies charge desperate parents shockingly high prices while simultaneously providing little to no actual treatment and substandard education. The legal status of these facilities varies from state to state, and not all such facilities are created equal. While some are well-intentioned, others are riddled with abusive conduct and cause serious harm to their residents. The dangers posed by these companies are so serious that the University of South Florida and the Bazelon Center for Mental Health Law founded the Alliance for the Safe, Therapeutic, Appropriate use of Residential Treatment in response to this growing industry that profits over $1 Billion dollars annually housing between ten and fourteen thousand minor children a year.

3.    This is an action brought by and on behalf of human trafficking victims the troubled teen industry.  Since 1997 Defendants Gerald ("Jerry") Schneider and Michaeleen P. Schneider (hereinafter "Defendant Triangle Owners") have owned the property located at 423 Road 1AF, Powell, Wyoming (hereinafter the "Triangle Ranch"), on which Defendant Triangle Cross Ranch, LLC have operated their human trafficking operations[1]. The Triangle Ranch is advertised as a fifty

---

[1] For simplicity, any reference to the operation of the human trafficking businesses by any of the three business may

thousand (50,000) acre working ranch with over one thousand (1,000) head of cattle which is believed to cross state lines between Wyoming and Montana. Defendant Triangle Owners founded Mount Carmel Youth Ranch (hereinafter "Mount Carmel"), a Wyoming nonprofit corporation, which operated at the same location to provide group home licensed services to troubled teens. When the Mount Carmel board of directors decided to close the facility and turn in their license in November 2012, Defendant Triangle Owners wanted to "continue the good work that had been going on at Mount Carmel,"[2] so in December 2012, Defendant Triangle Owners applied to the Wyoming Department of Family Services (hereinafter "DFS") for a license in the name of Triangle Cross Ranch, Inc.  That application process closed March 6, 2013, due to the Defendant Triangle Owners failure to provide the necessary information for its completion to DFS.  Defendant Triangle Owners operated the Triangle Cross Ranch for nearly two (2) years without a license as required by Wyoming law until the Wyoming Supreme Court enjoined Defendant Triangle Owners from continuing to operate the Triangle Ranch. *See Triangle Cross Ranch, Inc. v. State*, 2015 WY 47, ¶ 21, 345 P. 890, 895 (Wyo. 2015).  DFS allegedly received information that Defendant Triangle Owners were operating the Triangle Ranch without the appropriate license and sent a cease-and-desist letter to Defendant Triangle Owners on July 27, 2013.  Upon information and belief, Defendant Gerald Schneider informed DFS on August 27, 2013, that Defendant Triangle Owners relocated all operations related to minor children to portions of the ranch located in Montana to avoid Wyoming State certification and regulatory oversight rather than obtain the proper certifications in Wyoming. Defendant Triangle Owners re-opened the Triangle Ranch as

---

be referred to as "TCR")

[2]  Plaintiffs aver Defendant Triangle Owners' true desire for licensing was to continue the exploitation of troubled minor teenage boys by charging their parents upwards of $6,000 a month for services that Defendant Triangle Owners had no intention of providing while forcing troubled minors to engage in forced labor.

Triangle Cross Ranch, LLC, in Wyoming in 2018 under the guise of a Wyoming group home and began continuing their pattern of systematic abuse and exploitation of delinquent teenage boys for their labor.

4.      Triangle Ranch claims to offer various kinds of therapeutic interventions for its residents. For example, "Reality Therapy" was described in the July 2013 Triangle Ranch website as "an approach to psychotherapy and counseling . . . Reality therapy is considered a cognitive behavioral approach to treatment."

5.      In fact, "Reality Therapy," is a real therapy method developed during the Vietnam War at the Veterans Administration hospital in Los Angeles by Dr. William Glasser. It refers to a process that is people-friendly and people-centered, focusing on teaching them how fantasy can distract people from choices that are within their control in life. It has nothing to do with giving someone a "dose of reality" or the threat of punishment. By contrast, as practiced by TCR, reality therapy is merely abuse. Defendant Gerald Schneider himself described "reality therapy" as practiced by the Triangle Ranch trial.

> Reality therapy is kind of self-explaining, really. I mean on a ranch, okay, you can't control mother nature. You can only work with her. Okay? That's reality. Okay? Now, a young man can get pretty frustrated because it's so stinkin[g] cold out. Okay?
>
> And getting dressed and being prepared and that kind of thing is a -- is a reality of the therapy. Maybe I've told him, don't you come out without your boots and your coveralls on, and then I catch him out there. Okay? Uh-huh. You turn around and go back to the house. He's going to listen to me because he's cold.

The Wyoming Supreme Court's response to this testimony was to state: "The reality is that healthy people do not pay for the privilege of stacking hay." *Triangle Cross Ranch, Inc. v. State of Wyoming*, 2015 WY 47 at ¶16. This, of course, is not actually therapy. It is merely the forced labor of children in hazardous conditions.

6.      To obtain this labor, Plaintiffs and putative class members or their parents were promised an atmosphere in which troubled teenage minors could grow physically, academically, mentally, emotionally, socially, and spiritually through therapy and treatment. Instead of the atmosphere and treatment they were promised, Plaintiffs and others similarly situated were transported to Wyoming, often through legal kidnapping at the suggestion of Defendant Triangle Owners, and forced to work in unfathomable conditions while receiving little to no formal education, behavioral treatment, or therapy. They were made to labor from early morning until late at night, without pay, under the constant threat of physical and psychological punishment and further confinement.

7.      Defendant Triangle Owners and their recruitment agents defrauded Plaintiffs, other putative class members, and their parents throughout the recruitment process, inducing them into paying substantial fees for residential treatment, under promises of receiving full-time cutting-edge therapies and while maintaining proper education towards high school graduation. Defendant Triangle Owners actually forced Plaintiffs and putative class members to work without pay for periods of time lasting between months and years.[3] Defendant Triangle Owners and/or their agents caused Plaintiffs and the putative class members to believe that if they did not work for Defendants, they would suffer physical or emotional abuse and prolonged confinement.

8.      Immediately upon Plaintiffs' and the putative class members' arrival at Triangle Ranch, Defendant Triangle Owners and their agents blatantly disregarded the terms of residential or group treatment they had promised Plaintiffs, putative class members, and their parents and Defendant Triangle Owners immediately began exploiting Plaintiffs and the putative class members.

---

[3] TCR's website states most boys stay for 9-18 months.

9.     Plaintiffs and the putative class members were immediately subjected to a jail style strip search upon arrival at Triangle Ranch. Defendant Triangle Owners and/or their agents began the systematic control of Plaintiffs and the putative class members by the threat of further confinement unless Plaintiffs and the putative class members completed all chores and ranch duties, including, but not limited to, running miles of irrigation lines, picking rocks out of fields for days at a time, setting thousands of fence posts, loading massive trucks of hay daily, repairing barbed wire fencing, cleaning, cooking, tending farm animals, birthing livestock, maintaining fires throughout the night due to Defendant Triangle Owners failure to provide heat, and performing labor for the other Defendants. Laboring conditions were hazardous, causing numerous injuries and even frostbite.

10.     Upon arrival at Triangle Ranch, Plaintiffs and the putative class members were forced to watch the 2003 movie "Holes" starring Shia LaBeouf, which is a story about a wrongfully convicted boy who is sent to a brutal desert detention camp where he joins the job of digging holes for some mysterious reason without the chance of escape or freedom in sight. After having their will broken by the indoctrination video, Plaintiffs and the putative class members were subject to immediate forced labor after their initial jail-style strip search.

11.     Plaintiffs and the putative class members at Triangle Ranch were then subjected to or threatened with food and sleep deprivation, physical punishment, assault and battery, and emotional abuse.  Plaintiffs and the putative class members at Triangle Ranch where provided a single pair of pants, a single shirt, two pairs of socks, and one pair of underwear. Defendant Triangle Owners created a dual tier system.  Plaintiffs and the putative class members at Triangle Ranch were housed in rudimentary uninsulated sheds without any form of heat source, but equipped with solar powered alarms to prevent them from leaving.  While they were considered

"Wilderness Level" they were locked into these sheds without access to a latrine for extended periods and overnight and forced to urinate into jugs. Defecation presented a difficult problem in that most class members were unable to defecate into the jugs and simply had to defecate wherever they could. Plaintiffs and the putative class members at Triangle Ranch could get upgraded to the Bunkhouse Level if they abided by all physical labor standards and chores. This would entitle them to better food, clothing, living inside with a heat source or window A/C unit and running water.  If a Plaintiff or putative class member failed to abide by Defendant Triangle Owners' physical labor or chore demands they would be returned to "Wilderness Level."

12.    Plaintiffs and the putative class members at Triangle Ranch were immediately cut off from communicating with their parents about conditions at Triangle Ranch. All mail incoming and outgoing was read by staff members and Plaintiffs and the putative class members were forced to re-write communication to their parents if they stated anything negative about TCR operations. Furthermore, once telephone communication was authorized a TCR staff member observed all telephone communications and at all times had the ability to terminate the communication and often did terminate communications if Plaintiffs or the putative class members said anything negative about TCR.

13.    Defendant Triangle Owners' scheme was designed to make Plaintiffs and other putative class members afraid, intimidated, and powerless to leave Defendant Triangle Owners' employment while all Defendants profited or knowingly benefitted, financially or through receipt of free labor, from participation in a venture which all Defendants knew or should have known was unlawful.

## II.

## SUBJECT MATTER JURISDICTION AND VENUE

14.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1589 *et seq.*) (hereinafter "TVPRA").

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

## III.

## THE PARTIES AND PERSONAL JURISDICTION

16.    Plaintiff Andrew Scavuzzo (hereinafter "Plaintiff Scavuzzo") is an individual residing in Boulder County, Colorado.

17.    Plaintiff H.I., as parent and next friend of T.I. (hereinafter "T.I."), is an individual residing in California.

18.    The putative class members (hereinafter "Class Members") are all of the individuals confined at Triangle Ranch during the relevant statute of limitations period, who were forced to perform labor by Defendant Triangle Cross Ranch, LLC.

19.    Defendant Triangle Cross Ranch, LLC[4] is a Wyoming limited liability company. Its principal place of business is 423 Road 1AF, Powell, WY 82435 and may be served with process through its registered agent Timothy D. Stewart at 1222 11th St., P.O. Box 1628, Cody,

---

[4] Triangle Cross Ranch, LLC operated without a license between 2012 – 2018. It was originally formed in 2012 as Triangle Cross Ranch, Inc. which was administratively dissolved in 2015. Gerald Schneider was at all times listed with the Wyoming Secretary of State as the Director.

WY 82414. Defendant Gerald Schneider is listed as the Organizer with the Wyoming Secretary of State. The company was formed on July 9, 2018, and is still active.

20.    Defendant Gerald ("Jerry") Schneider (hereinafter "Gerald Schneider") may be served with process at 423 Road 1AF, Powell, WY 82435.

21.    Defendant Michaeleen Schneider (hereinafter "Michaeleen Schneider") is the wife of Gerald Schneider. She may be served with process at 423 Road 1AF, Powell, WY 82435.

22.    Defendant Mathew Schneider (hereinafter "Mathew Schneider") is the son of Gerald Schneider and may be served with process at either 423 Road 1AF, Powell, WY 82435 or 402 Road 8VE, Powell, WY 82435. He is the Program Director and co-founder at both Mount Carmel Youth Ranch and at Triangle Ranch.

23.    Defendant Mark Schneider (hereinafter "Mark Schneider") is the son of Gerald Schneider and may be served with process at 423 Road 1AF, Powell, WY 82435. He is the Ranch Manager at Triangle Ranch.

24.    Defendant Thomas George (hereinafter "Thomas George" or "Tom") may be served at 391 Road 1AF, Powell, WY 82435. Thomas George served as Executive Director of Mount Carmel Youth Ranch and Triangle Ranch. Additionally, he served as Special Projects Manager and a Family Life Coach.

25.    Defendant Society of Our Lady of the Most Holy Trinity (hereinafter "SOLT") is a Texas corporation, and a Roman Catholic Religious Institute of Men, with its principal place of business in Robstown, Texas. At all times material herein, SOLT operated ministries in and conducted activities through the Diocese of Cheyenne. It may be served with process to Father John P. Gaffney[5] at 1200 Lantthana, Corpus Christi, TX 78407.

---

[5] Of note is that Thomas George was the registered Agent of SOLT between 2006 – 2010 at 402 Rd 8ve, Powell, WY

26.    This Court has both general and specific personal jurisdiction over Defendants because each Defendant has had substantial and continuous contact with Wyoming, the grounds that the claims asserted against it arise from its transaction of business within Wyoming and on the grounds that it has committed a tortious act within Wyoming.  Furthermore, Defendants' contacts and actions were directed toward Wyoming and thus warrant the exercise of personal jurisdiction over it.

**IV.**

**FACTUAL ALLEGATIONS**

**A.    Summary of Class Allegations**

27.    On, or about, May 1, 1997, Defendants Gerald and Michaeleen Schneider, established Mount Carmel Youth Ranch (hereinafter "MCYR"), which had a history of problems to include, but not limited to, staff and residents suffering severe and permanent injuries, multiple failures to report serious incidents to Department of Family Services, and serious questions regarding its interlocked profit-making and nonprofit operations. Mount Carmel Youth Ranch, later rebranded as both Triangle Cross Ranch Inc., and ultimately Triangle Cross Ranch, LLC, deprived its minor residents of basic human necessities. The Schneiders forced residents to conduct mechanical work[6], construction work[7], or agricultural work[8] depending on the resident's skill set

---

82435 according to the Wyoming Secretary of State until SOLT allowed its status to shift to inactive as it chose to operate under its Texas business filings.

[6] Mechanical work consisted of small engine repair, diesel mechanical work, installation of new transmissions, greasing vehicles, and general vehicle preventive maintenance and upkeep.

[7] Construction work consisted of constructing sheds and other permanent structures on the Triangle Ranch without any safety harnesses, equipment, or proper supervision.

[8] Agricultural work at Triangle Ranch consisted mainly of feeding, grooming, branding, birthing, training, and overall taking care of hundreds to thousands of cattle, horses, and chickens daily.  Residents were responsible for branding, herding, inoculation, and general veterinary care of all Triangle Ranch's animals to include Defendant Gerald Schneider's personal herd of cattle.

and the time of year. The Schneiders forced residents to work their separate horse and cattle businesses, which raised between 250 and 1,000 calves per year.

28.    Upon information and belief, Defendant Thomas George at times relevant to this matter, served as Executive Director of Mount Carmel Youth Ranch and Triangle Ranch. Additionally, he served as Special Projects Manager and a Family Life Coach.  Finally, he served the Catholic Church as a lay missionary member of SOLT for over twenty years.  For six of those years as the International Regional Director of SOLT, directing the activities of Priests, Religious and Lay faithful within the Society. At all times relevant to these proceedings, he coordinated, approved, directed, and facilitated the use of child labor from Triangle Ranch at SOLT and other Catholic Church facilities.

29.    At all times, Defendant Triangle Owners engaged in a recruitment scheme, whereby enticing parents of troubled minor teenagers across the United States and World to pay substantial sums of money under the guise that their children would receive cutting edge residential treatment, therapy, and continuing education. Defendant Triangle Owners failed to provide the requisite treatment, therapy, continuing education, or even basic human necessities[9].

30.    Defendants Triangle Cross Ranch, LLC, and Defendant Triangle Owners and/or their employees or agents used or threatened food and sleep deprivation, physical punishment, emotional abuse, and humiliation daily to ensure compliance with the labor requirements.

31.    Plaintiffs and the putative class members felt as though they had no other choice but to continue working for Defendants because any refusal or minor infraction would result in a

---

[9]  Plaintiffs and the putative class members were not even provided a restroom in their sleeping cabin at either facility. Plaintiffs and the putative class members were punished if they attempted to use the restroom at night. Class members were often forced to urinate on themselves in the middle of the night to avoid receiving a harsh punishment. Plaintiffs were limited to irregular five (5) minute showers, rarely more than every three (3) to four (4) days, for the vast majority of their time at both facilities.

decrease in in privileges and additional months of forced labor, food or sleep deprivation, physical[10] or emotional punishment, or humiliation.

32.    Defendant Gerald Schneider's son, Fr. Daniel Schneider, is the registered agent and President of Monks of the Most Blessed Virgin Mary of Mount Carmel, who also do business as Mystic Monk Coffee. Fr. Daniel Schneider would arrive at Triangle Ranch and request from his father, Defendant Gerald Schneider, labor that was needed at The Monastery and he would transport Triangle Ranch residents for forced labor at The Monastery. Quite often Fr. Daniel Schneider would deliver pressure washers and other machines requiring small engine repair for boys assigned to mechanical work at Triangle Ranch to complete at the Triangle Ranch.

33.    Specifically, but without limitation, Plaintiff Scavuzzo and other putative class members performed substantial mechanical and construction labor at The Monastery, actually building the physical infrastructure and buildings on its grounds. This work was performed without remotely adequate safety precautions. For example, putative class members would perform work on buildings as high as forty (40) feet without safety harnesses or hard hats. Putative class members performed labor that should have been performed by skilled tradesmen in compliance with OSHA safety standards. Instead, The Monastery and its funding arm, The Foundation, utilized the coerced child labor of the putative class members in constructing The Monastery's physical infrastructure.

34.    Daniel Schneider is an agent and officer of the Monks of the Most Blessed Virgin Mary of Mount Carmel and had direct knowledge that the putative class members were providing uncompensated labor to The Monastery and specifically knew that they faced punishment if they did not perform such services.

_____

[10] The physical punishment that Plaintiffs and the putative class members at Triangle Ranch would suffer included, but was not limited to, actual assault and battery,

35.     Additionally, upon information and belief, Defendant Triangle Owners' children, Defendants Mathew Schneider and Mark Schneider, became active employees of Triangle Ranch and at all times benefitted from the forced labor and human trafficking executed by Defendants Triangle Cross Ranch, LLC, and Defendant Triangle Owners.

**B.     Violations of the named Plaintiffs' Rights.**

**i.     Plaintiff Scavuzzo**

36.     Plaintiff Scavuzzo was a resident at Triangle Ranch from April 8, 2012, until July 4, 2012, when it was operated by Defendant Mount Carmel Youth Ranch.

37.     A non-exclusive list of examples of the labor Plaintiff Scavuzzo was forced to complete is as follows:

(a)     Welding for the fabrication of equipment components;

(b)     Regular roofing work and the installation of joists for the ongoing construction projects at The Monastery that inured to the financial benefit of The Foundation;

(c)     Running irrigation pipes for multiple hours a day for six days a week including but not limited to ditch irrigation, dam irrigation, and gate irrigation;

(d)     Installation of Heating, Ventilation, and Air Conditioning unit at the Our Lady of the Valley Church;

(e)     Shoveling manure, daily;

(f)     Feeding all animals (cows, horses, and chickens), daily;

(g)     Grooming all animals, daily;

(h)     Working for Tom George's seed business, Big Horn Saindfoint; and

(i)     Providing medical attention to all animals.

38.     Plaintiff Scavuzzo's forced labor occurred at 423 Road 1AF, Powell, Wyoming, 82435, and he provided construction and mechanical labor to The Monastery in support of its construction operations that inured to the financial benefit of The Foundation.

39.     Plaintiff Scavuzzo was 18 years old at the time of his stay. He was, however, not permitted to leave despite attempts to do so and attempts to contact his family in order to leave. He was then told that he would move into the "adult program," which offered better housing and certain "privileges" such as the ability to use tobacco. In order to be "inducted" into the adult program, Plaintiff Scavuzzo was told that he would have to be branded with a cross. Under pressure from the staff and out of a desperate need for better conditions, Plaintiff Scavuzzo agreed. He was branded with a 5-inch by 4-inch cross on his right arm by two staff members. He was provided no medical care for this and the wound quickly became infected. He repeatedly requested medical care and eventually access to an emergency room, which was denied. On July 4, 2012, his mother and father came for surprise visit. Upon seeing her son's injury, his mother immediately had him gather his things and they left the Ranch. Plaintiff Scavuzzo's father immediately contacted a physician who was a family friend who called in a prescription ointment to the nearest pharmacy. Plaintiff Scavuzzo was promptly taken for medical care and underwent four surgeries to repair the injury.

40.     Plaintiff Scavuzzo was coerced into performing the labor in question by coercion within the meaning of 22 U.S.C. § 7102 through threats of serious harm to or physical restraint and through a scheme, plan, or pattern intended to cause him to believe that failure to perform an act would result in serious harm or physical restraint. Specifically, **Plaintiff Scavuzzo** was threatened with, *inter alia*:

(a)     Not being allowed to progress to the "Bunkhouse level" and thereby obtain basic human living standards;

(b)     Being made to perform additional labor;

(c)     Being made to perform even more undesirable tasks like shoveling manure;

(d)     Being forced to subsist on an inadequate diet;

(e)     Being deprived of sleep;

(f)     Being deprived of basic human living needs, such as heat, air, running water, and a mattress;

(g)     Being subjected to corporal punishment such as running up and down a hill; and

(h)     Being subjected to physical, verbal, psychological, and emotional abuse.

41.     **ii.     Plaintiff T.I.**

42.     Plaintiff T.I. was a resident at Triangle Ranch on one occasion. His stay began January 2021 and lasted until March 2021. During his term of forced labor, the Ranch was run by Defendant Triangle Cross Ranch, LLC.

43.     A non-exclusive list of examples of the labor T.I. was forced to complete is as follows:

(a)     Shoveling manure, daily;

(b)     Feeding all animals (cows, horses, and chickens), daily;

(c)     Herding cows and bulls;

(d)     Grooming all animals, daily;

(e)     Mechanical repairs around the ranch;

(f)     Installing and repairing fencing;

(g)     Providing medical attention to all animals, daily

44.     Plaintiff T.I.'s stay was shorter than the typical class member's stay. Despite being informed by Plaintiff T.I. of a painful injury, Defendant Triangle Owners forced Plaintiff T.I. to work for a week without proper medical treatment, until Plaintiff's father insisted Defendant Triangle Owners take him to the hospital to be examined.

45.     Plaintiff T.I. was one of the youngest boys at the Ranch during his stay. As a result, he suffered bullying and physical harm from older residents at the Ranch. Defendant Triangle Owners and other staff did not intervene or take action to protect Plaintiff T.I. On one occasion, another stole a gift card from Plaintiff T.I. When Plaintiff T.I. asked for his gift card back, the other boy punched Plaintiff T.I. in the face, breaking his glasses and giving him a black eye.

46.     Plaintiff T.I. was often targeted in the bathroom when he was trying to shower. Other residents would attempt to take his towel away from him, shove, and trip him. On one occasion, he was pushed to the ground while two older residents attempted to remove his pants. On another occasion, an older boy pinned him down and put his bare backside in Plaintiff T.I.'s face.

47.     Plaintiff T.I. was told by an older boy that if he got a tattoo, the bullying would stop. Plaintiff T.I. was then given a stick and poke tattoo by another resident.

48.     When Plaintiff T.I.'s father came to take him home, Plaintiff T.I. had a 103-degree fever. He had been sick and sleep deprived for a full week, and had received no medical attention at the Ranch. Plaintiff T.I.'s father took him directly to Urgent Care, where he was diagnosed with a stomach virus.

49.     Plaintiff T.I. was coerced into performing the labor in question by coercion within the meaning of 22 U.S.C. § 7102 through threats of serious harm to or physical restraint and through a scheme, plan, or pattern intended to cause him to believe that failure to perform an act would result in serious harm or physical restraint. Specifically, Plaintiff T.I. was threatened with, *inter alia*:

> (a)     Not being allowed to progress to the through levels and therefore permitted to leave the Ranch.

> (b)     Being made to perform additional labor;

(c)     Being subjected to further bullying and physical harm from other residents without intervention from Triangle Ranch staff;

(d)     Being denied medical treatment for injuries and illnesses;

(e)     Being made to perform even more undesirable tasks like shoveling manure;

(f)     Being deprived of sleep;

(g)     Being subjected to physical, verbal, psychological, and emotional abuse[11].

## C.    <u>Uniform Damages to the Plaintiffs and the Class Members for Forced Labor.</u>

50.     Plaintiffs and the putative class members have sustained damages as the result of the unlawful use of their labor proximately caused by Defendants' acts. These damages include two three types.

51.     First, Plaintiffs and the putative class members are entitled to recover restitution damages under the TVPRA at least at the prevailing wage rate. Limiting TVPRA victims to the FLSA remedy would *inappropriately* afford criminals engaged in egregious practices the benefit of the lowest common-denominator minimum wage for legitimate employers. Plaintiffs and the putative class members are entitled to compensation for services provided at the same rates received by others who voluntarily provide those same services. *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1172 (D. Kan. 2018).

52.     Plaintiffs assert that each named Plaintiff and each Class Member is entitled to $16.31[12] per hour of labor for the first forty hours per week and $24.47 per hour for every hour afterwards. Plaintiffs allege that a typical day consisted of ten to twelve hours of labor, two to five

---

[11]  Each staff member had the discretion to punish Plaintiff T.I. at his own discretion and staff changed often.

[12] Prevailing hourly wage for farm labor based on the May 2019 Department of Labor's office of Occupational and Employment Statistics.

hours of sham therapy and/or education, and approximately two-and-one-half hours of hygiene and meals.

53.    Upon information and belief, Plaintiffs anticipate that at least 100 Class Members were unlawfully forced to work an average of eleven-and-one-half hours per day.  Plaintiffs contend that at any given time approximately twenty-three boys were forced to labor at Triangle Ranch or by Triangle Cross Ranch, LLC., and their employees or agents for the other Defendants.

54.    Second, Plaintiffs and the Class Members are entitled to recover compensatory damages for emotional distress to redress noneconomic harm related to the squalid, restricted, and threatening working/living conditions imposed on TVPRA victims. Courts have awarded damages to trafficking victims subjected to forced labor in amounts ranging from $415 to $780 per day. *Id.* at 1173-74. Plaintiffs contend that they should be awarded at least $780 per day due to the especially vulnerable nature of the Class, all of whom were minor children suffering from mental and emotional health problems, family distress, or addiction issues that rendered them especially vulnerable to abuse. Plaintiffs and the Class seek an award of such compensatory damages in amount to be proven at the trial.

55.    Plaintiffs allege that they and the Class should also be permitted to recover any sums paid during their residence at Triangle Ranch relative to their putative "treatment" or housing. Plaintiffs are without knowledge of the precise sums in issue, but, on information and belief, these sums ranged between $6,000 and $9,000 per month per child.

56.    Plaintiffs reserve the right to amend this allegation based upon the discovery that will be conducted in this action.

**V.**

**CLASS ACTION ALLEGATIONS**

57.     The named Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) of

the Federal Rules of Civil Procedure, and pursuant to Rules 23(b)(1), 23(b)(2) and/or 23(b)(3)

defines the class as follows:

> From November 27, 2010, to the present, Plaintiffs, and all similarly situated
> persons who were housed at Triangle Ranch and forced to provide manual labor
> by or to one or more of the Defendants.

58.     **Numerosity.**  The requirements of Rule 23(a)(1) are satisfied in that there are too

many Class Members for joinder of all of them to be practicable.  Upon information and belief,

these Class Members exceed at least 100 in number. This Class, as defined above, meet the

numerosity requirement.

59.     **Commonality.**  The claims of the Class Members raise numerous common issues

of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2). These common legal and

factual questions, which may be determined without the necessity of resolving individualized

factual disputes concerning any Class Member.

60.     This action involves questions of law common to the class, including:

 (i)     Whether Defendants' conduct violated the forced labor and trafficking provisions

         of the TVPRA (18 U.S.C. §§ 1589, 1590, 1593A, and 1594);

(ii)     Whether Defendants' engaged in a pattern and practice of human trafficking and

         forced labor in violation of 18 U.S.C. §§ 1589 & 1590;

(iii)    Whether Defendants regularly advertised and moved goods and people across state

         lines and engaged in interstate commerce; and

(iv)      The nature of damages available to Plaintiffs and members of the putative class,

         including the applicability of compensatory and/or punitive damages.

61.     This action involves questions of fact common to the class, including:

(i)     Whether Defendants used and/or threatened Plaintiffs and other putative class members with physical restraint, serious harm, and/or abuse of the legal process in order to obtain Plaintiffs' and other putative class members' labor or services;

(ii)    Whether Defendants' recruited, harbored, transported, obtained and/or provided Plaintiffs and other putative class members for the purpose of subjecting them to forced labor and/or involuntary servitude;

(iii)   Whether Defendants' knowingly benefitted from participating in a venture that Defendants knew or should have known was engaged in providing and/or obtaining Plaintiffs' and other putative class members' labor or services through physical restraint, serious harm, and/or abuse of the legal process;

(iv)    Whether Defendants knowingly benefitted from participating in a venture that Defendants knew or should have known was engaged in the recruitment, harboring, transporting, obtaining and/or providing Plaintiffs and other putative class members for the purpose of subjecting them to forced labor and/or involuntary servitude;

(v)     Whether Defendants used standardized recruitment, record-keeping, and employment policies and practices for Plaintiffs and putative class members; and

(vi)    The source and amount of Plaintiffs' and other class members' damages.

62.     **<u>Typicality</u>**.  The claim of the named Plaintiffs is typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3). For example, the named Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class Members were injured or damaged by the same wrongful practices in which Defendant engaged.

63.    **Adequacy of Representation.**   The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiffs have a sufficient stake in the litigation to vigorously prosecute their claims on behalf of the Class Members and the named Plaintiffs' interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from the other members of the Class, and the relief sought is common to the Class.  Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class and has no conflict with any other member of the Class.

64.    Further, Plaintiffs have retained competent counsel experienced in class action litigation, to represent them and the Class Members in this litigation. To wit, Plaintiffs' chosen counsel consists of:

(a)    Michael Rosenthal and Nathan Nicholas of Hathaway & Kunz, LLP are licensed members of the Wyoming State Bar in good standing and will serve as Local Counsel for this action.  For more than 35 years Mr. Rosenthal's practice has primarily been focused on personal injury, representing both plaintiffs and defendants in litigation, trials and appeals.  He has appeared in litigation before all of Wyoming's Federal Court Judges and Magistrate Judges, as well as in every state judicial district court.  His experience includes involvement in several class action lawsuits in both federal and state courts within Wyoming.  He is well-versed in local practices, rules and procedures.  Mr. Rosenthal and the rest of the Plaintiffs' counsel will be assisted by Nathan Nicholas, an associate and litigator at Hathaway & Kunz, LLP.

(b)    Frank Watson of Watson Burns, PLLC has successfully prosecuted class actions in numerous matters, including, but not limited to, class action suits brought against law firms for charging and collecting unlawful fees and expenses. *See, e.g., Howard et al v. Wilkes & McHugh, P.A.*, Case No. 2:06-cv-02833-JMP-cgc (W.D. Tenn. Filed 2006)(appointing Watson Burns, PLLC

as Class Counsel and ultimately approving $4 million settlement in connection with overcharged legal fee); *Manjunatha A. Gokare, P.C. and Goldstein, Borgen, Dardarian & Ho, P.C. v. Federal Express Corporation, et al.,* Case No. 2:11-cv-2131-JTF-cgc (W.D. Tenn. Filed Nov. 11, 2011)(appointing Watson Burns co-lead class counsel representing nationwide class in breach of contract and RICO claims against international freight shipper alleging overcharging for residential delivery surcharge fees for delivers made to non-residential locations; nationwide class was certified and a settlement of $26 million was approved); *Youngblood v. Linebarger, Goggan, Blair & Sampson, LLP*, Case No. 10-cv-2304 SHM-tmp (W.D. Tenn. filed Mar 10, 2010)(Watson Burns appointed lead class counsel representing plaintiff class of 48,000 delinquent taxpayers against Texas law firm alleging that Linebarger charged and received an unlawful legal fee from taxpayers when pursuing property tax collection suits on behalf of the City of Memphis; the class was certified and ultimately settled for $7.4 million); *Ham v. Swift Transportation Co., Inc*., 275 F.R.D. 475 (W.D. Tenn. 2011)(Watson Burns appointed co-lead class counsel representing plaintiff class against national trucking company challenging the testing practices of a commercial truck driving; class-wide settlement case achieved for compensatory damages and debt write off valued in excess of $17 million).

(c)    Additionally, Plaintiffs' chosen counsel includes Brice M. Timmons of Donati Law, PLLC. Mr. Timmons is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, jails, prisons, private prison contractors, and educational institutions. Mr. Timmons has significant experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions including the representation of disabled minor plaintiffs as class counsel. Mr. Timmons

has handled and/or tried hundreds of cases during that time period. Mr. Timmons has also been appointed class counsel in two civil rights actions. Specifically, Mr. Timmons is class counsel in *Busby v. Bonner*, 2:20-cv-02359 (TNWD, 2020), in which, along with the American Civil Liberties Union and others, he represents a class of incarcerated persons who are especially vulnerable to COVID-19 on claims arising under various federal civil rights statutes and in which he and his co-counsel received class certification prior to ultimately negotiating the most comprehensive consent decree achieved to date in the plethora of civil rights actions brought in response to the COVID-19 pandemic's impact on jails and prisons. He has also been appointed class counsel in *Turnage v. Oldham*, 2:16-cv-02907 (TNWD, 2016) in which he represents a putative class of persons subjected to over detention due to the employment of a faulty software package to operate the county jail and criminal courts in claims arising under 42 U.S.C. §1983 and Tennessee common law.

65. **Predominance and Superiority.** All of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation.  In particular, the Plaintiffs and the Class Members have suffered a common cause of injury, namely the forced labor of Plaintiffs and the Class Members, caused by the common course of conduct engaged in by Defendants. The Class Members' legal claims arise under 18 U.S.C. § 1581 *et seq.* and 18 U.S.C. § 1961 and Wyoming law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable.  The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could

afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. *Zuccarini v. Hoechst (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 335 (E.D. Mich. 2001)("Differences in damages sustained by individual class members does not preclude a showing of typicality nor defeat class certification"); *Bremiller v. Cleveland Psychiatric Inst*., 898 F. Supp. 572, 579 (N.D. Ohio 1995)("The above-cited caselaw demonstrates that the existence of individual damages is not enough to defeat class certification on the commonality element. Therefore, the court declines to decertify the class on this basis") As a result, the desirability to concentrate litigation in this forum is significantly present. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class would be proper.

## VI.

## <u>CAUSES OF ACTION</u>

### COUNT 1 – CIVIL ACTION UNDER FEDERAL LAW FOR FORCED LABOR
### 18 U.S.C. § 1589(a)

**(AGAINST DEFENDANTS TRIANGLE CROSS RANCH, LLC, GERALD SCHNEIDER, MICHAELEEN SCHNEIDER, MATHEW SCHNEIDER, and MARK SCHNEIDER)**

66.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

67.    Pursuant to 18 U.S.C. § 1595(a), Plaintiffs and members of the putative class are entitled to bring a civil action against the perpetrator (or whoever knowingly benefits financially

or by receiving anything of value from participating in a venture which that persons knew or should have known engaged in an act in violation of 18 U.S.C. § 1581 *et seq*.

68.     Defendants knowingly provided or obtained the labor services of Plaintiffs and members of the putative class by means of force, threats of force, physical restraint, or threats of physical restraint in violation of 18 U.S.C. § 1589(a).

69.     Defendants knowingly provided or obtained the labor services of Plaintiffs and members of the putative class by means of serious harm or threats of serious harm in violation of 18 U.S.C. § 1589(a).

70.     Defendants knowingly provided or obtained the labor services of services of Plaintiffs and members of the putative class by means of a scheme, plan, or pattern intended to cause services of Plaintiffs and members of the putative class by means to believe that, if they did not perform such labor or services, they would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a).

71.     As a result of Defendants' conduct, Plaintiffs and members of the putative class suffered economic damages, for which they should be compensated.

72.     As a result of Defendants' conduct, Plaintiffs and members of the putative class suffered emotional and physical pain and suffering for which they should be compensated.

### COUNT 2 – CIVIL ACTION UNDER FEDERAL LAW FOR FORCED LABOR 18 U.S.C. § 1589 (b)

### (AGAINST ALL DEFENDANTS)

73.     Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

74.     Pursuant to 18 U.S.C. § 1595(a), Plaintiffs and members of the putative class are entitled to bring a civil action against the perpetrator (or whoever knowingly benefits financially

or by receiving anything of value from participating in a venture which that persons knew or should have known engaged in an act in violation of 18 U.S.C. § 1581 *et seq.* and may recover reasonable attorney's fees.

75.    Defendants knowingly benefitted financially and/or received things of value from participating in a venture which had engaged in the providing or obtaining of forced labor or services, knowing or in reckless disregard of the fact that the venture had engaged in the providing or obtaining of forced labor or services in violation of 18 U.S.C. § 1589(b).

76.    As a result of Defendants' conduct, Plaintiffs and members of the putative class suffered economic damages, for which they should be compensated.

77.    As a result of Defendants' conduct, Plaintiffs and members of the putative class suffered emotional and physical pain and suffering for which they should be compensated.

**COUNT 3 – CIVIL ACTION UNDER FEDERAL LAW FOR TRAFFICKING
18 U.S.C. § 1590(a)**

**(AGAINST ALL DEFENDANTS)**

78.    Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

79.    Pursuant to 18 U.S.C. § 1595(a), Plaintiffs and members of the putative class are entitled to bring a civil action against the perpetrator (or whoever knowingly benefits financially or by receiving anything of value from participating in a venture which that persons knew or should have known engaged in an act in violation of 18 U.S.C. § 1581 *et seq.* and may recover reasonable attorney's fees.

80.    Defendants knowingly recruited, harbored, transported, provided, and/or obtained by any means Plaintiffs and members of the putative class for their labor or services in violation of 18 U.S.C. § 1590(a).

81.   Defendants knowingly benefitted financially and/or by receiving things of value from participating in a venture which engaged in the trafficking of forced labor by any of the means described herein, knowing or in reckless disregard of the fact that the venture was engaged in the trafficking of forced labor or services by any of such means.

82.   As a result of Defendants' conduct, Plaintiffs and members of the putative class suffered economic damages, for which they should be compensated.

## VII.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the named Plaintiffs and the Class Members demand judgment against Defendants Triangle Cross Ranch, LLC., Gerald ("Jerry") Schneider, Michaeleen P. Schneider, Mathew Schneider, Mark Schneider, Thomas George, Society of Our Lady of the Most Holy Trinity, on each Count of the Second Amended Complaint and pray for the following relief:

1.   Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiffs and their counsel to represent the Class, and directing that reasonable notice of this action be given by Defendants to all Class Members;

2.   Grant any reasonable request to Amend Plaintiffs' Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

3.   Empanel a jury to try this matter;

4.   Award each plaintiff Class Member compensatory damages who has suffered same in an aggregate amount to be proven at the trial;

5.   Award Plaintiffs threefold damages and reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c);

6.   Award Plaintiffs' their reasonable attorney's fees, pursuant to 18 U.S.C. § 1595;

7.    Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

8.    Award pre-and post-judgment interest in the amount of 10% per annum in an amount according to the proof at trial; and

9.    Grant the Plaintiff and Class Members such further relief as the Court may deem just and proper.

DATED this 11th day of March 2022.

Andrew Scavuzzo and H.I. as Parent and Next Friend of T.I., on behalf of themselves and all similarly situated persons, PLAINTIFFS

## DEMAND FOR TRIAL BY JURY

PURSUANT TO RULE 38 F.R.C.P., PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE OF RIGHT BY A JURY.

By: */s/Brice M. Timmons*
    Brice M. Timmons (TN Bar #29582)
    Craig Edgington (TN Bar #038205)
    Bryce Ashby (TN Bar #026179)
    *Pro Hac Vice*
    Donati Law, PLLC
    1545 Union Ave.
    Memphis, TN  38104
    (901) 209-5500
    Fax: (901) 278-3111
    craig@donatilaw.com
    brice@donatilaw.com
    bryce@donatilaw.com

    Michael Rosenthal, WSB #5-2099
    Nathan Nicholas, WSB #7-5078
    Hathaway & Kunz, LLP
    P.O. Box 1208
    Cheyenne, WY  82003-1208

(307) 634-7723
Fax: (307) 634-0985
mike@hkwyolaw.com
nnicholas@hkwyolaw.com

Frank L. Watson, III (TN Bar #015073)
*Pro Hac Vice*
Watson Burns, PLLC
253 Adams Avenue
Memphis, TN  38104
(901) 529-7996
Fax: (901) 529-7998
fwatson@watsonburns.com

*ATTORNEYS FOR PLAINTIFFS AND
PUTATIVE CLASS MEMBERS*

## CERTIFICATE OF SERVICE

This is to certify that on the 1st day of March, 2022, a true and correct copy of the foregoing was served upon counsel as follows:

Jane M. France                                              [ x ]  CM/ECF
SUNDAHL, POWERS, KAPP & MARTIN, LLC       [   ]  U.S. Mail
1725 Carey Avenue                                       [   ]  Fax:  (307) 632-7216
P.O. Box 328                                                [   ]  E-mail:
Cheyenne, WY  82003                                              jfrance@spkm.org
*Attorney for SOLT*

Makenna J. Stoakes,                                     [ x ]  CM/ECF
Patrick J. Sodoro                                          [   ]  U.S. Mail
Sodoro, Mooney, Lenaghan                            [   ]  Fax:
13924 God Circle                                          [   ]  E-mail:
Omaha, NE  68144                                                mstoakes@smllawoffice.com
*Attorneys for SOLT*                                           psodoro@smllawoffice.com

Monty L. Barnett                        [ x ]  CM/ECF
Rachel E. Ryckman                       [   ]  U.S. Mail
Keith R. Olivera                        [   ]  Fax:
WHITE AND STEELE, P.C.                   [   ]  E-mail:
Dominion Towers, North Tower                   mbarnett@wsteele.com
600 17th Street, Suite 600N                    rryckman@wsteele.com
Denver, CO 80202-5406                          kolivera@wsteele.com
*Attorneys for TCR, Gerald E. Schneider,*
*Mark Schneider, Mathew Schneider,*
*Michaeleen P. Schneider, & Thomas George*


John C. Matthews                        [ x ]  CM/ECF
*PRO HAC VICE - PENDING*                 [   ]  U.S. Mail
WHITE AND STEELE, P.C.                   [   ]  Fax:
600 17th Street, Suite 600N             [   ]  E-mail:
Denver, CO  80202                              jmatthews@wsteele.com
*Attorney for TCR, Gerald E. Schneider,*
*Mark Schneider, Mathew Schneider,*
*Michaeleen P. Schneider, & Thomas George*


                              */s/ Brice M. Timmons*